Peck, J.
The only question raised upon the demurrer is, whether the act creating the Cincinnati, Lebanon and Xenia Railroad Company, passed March 22, 1850 (48 Ohio Laws, 284), was a valid and subsisting law, at the time of the subscription to its capital stock and its organization, in November, 1852.
It is claimed by the relator that, being a special act conferring corporate powers, and no step having been taken by the commissioners named therein, to procure subscriptions and organize under it until after the new constitution took effect, that it was by necessary implication thereby repealed. Secondly, it is claimed that if not abrogated by the new constitution, the special act was, nevertheless, repealed by the general law “ to create and regulate railroad companies,” of May 1, 1852 (Swan’s R. S. of 1854, p. 197), enacted in pursuance of the new constitution, and providing for the organization of such companies in a very different manner, and which by necessary implication, it is said, forbids any inconsistent mode of organization after the new constitution took effect.
The provisions of the new constitution, to which this effect is attributed, are sections 1 and 2 of article 13, relating to corporations, which read as follows:
“ Sec. 1. The general assembly shall pass no special act conferring corporate powers.
“ Sec. 2. Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed.”
It is said, and with truth, in 6 Ohio St. Rep., p. 328, that both these sections are prospective. The first section, in its *26 terms, merely prohibits future special legislation conferring corporate powers, and does not, expressly nor by implication, abrogate former legislation of that character; and we think it equally manifest, that the 2nd section contemplates none other than future legislation in the creation of corporate powers, and this is apparent from the last clause of the section, “ but all such laws may, from time to time, be altered or repealed.” This reservation of the right to repeal all the laws authorized by the first clause, indicates clearly that the 2nd section, like the 1st, refers to future legislation alone, and that the two united, amount merely to an express authority to subsequent legislatures to pass general laws creating corporations, and prohibiting them from passing any special laws for such a purpose.
The general grant of legislative power in the constitution of 1851, Avould have sufficed for the purpose attained by the first clause of said 2nd section; but the manner in which the constitution was framed, each title being the work of a separate committee to which it had been intrusted, which strove to make the title confided to it perfect in itself, without much regard to the minuter provisions of other articles, will account for the repetitions to be found throughout the instrument, and the someAvhat different language in which they are clothed, so that the occurrence of such repetitions in language somewhat variant, will scarcely warrant us in attaching some occult and less obvious meaning to the peculiar language employed.
It is proper in this connection to notice the argument based upon the peculiar phraseology of the 2nd section — “corporations may be formed under general laws ” — which, it is insisted, was resorted to, to meet cases like the one under consideration — a previous law authorizing the formation of a corporation, not then acted on, and to prohibit its subsequent formation. If this were so, the convention adopted language illy calculated to express their meaning; and had they so intended, they would doubtless have used a more simple and direct form of expression — one abrogating all unaccepted acts ' of incorporation. It is manifestly a grant of legislative *27 power, and not the enunciation of a general principle. The existence of such grants did not probably occur to them, or if it did, they were content with the prohibition as to future legislation contained in the 1st section.
It is apparent that neither in the constitution of 1851, nor yet in the general statute of May 1,1852, “ to create and regulate railroad companies,” is there to be found any express repeal of the special act of March 22, 1850; so that the repeal, if any, is one by implication only. Repeals by implication are never favored; it being but reasonable to suppose, in the absence of'words of express repeal, that the legislature in enacting a law, presumed to have been passed with deliberation and a full knowledge of all existing laws upon the same subject, did not intend to abrogate or repeal any prior law relating to the same matter, or they would have expressly repealed it. Hence the rule that one statute does not repeal a prior statute upon the same subject, except in cases of very strong repugnance or irreconcilable inconsistency. If the acts may well subsist together, the prior act is not repealed. 5 Hill, 221; 2 Bail. S. C. 816; 6 Watts a.nd Serg. 209; 10 Barr, 442; 21 Penn. 37. “ Or unless, in the latest act, some express notice is taken of the former, plainly indicating an intention to abrogate it.” 5 Hill, supra. The same rules apply to repeals by the adoption of a new constitution. There must be such clear repugnancy, or a manifested intention to repeal, and, indeed, the constitution of 1851, in section 1, of the “ schedule,” declares that all laws in force when it took effect, and not inconsistent therewith, shall continue in force until amended or repealed.
With these rules to guide us, let us inquire whether there is any such clear and irreconcilable repugnance between the special act of March 22, 1850, and these sections of the new constitution. As we have seen, the constitution of 1851 prescribes a rule for future legislation merely, and does not, in words, interfere with laws enacted under the old constitution. How, then, can it be said that the two can not subsist together ?
*28 It is very true that the act of March 22, 1850, did not ere ate a present corporation. It merely authorized the commissioners to open books, receive subscriptions, and thereupon to organize the company. It is also true that no steps had been taken by the commissioners toward such subscription and organization until after the adoption and taking effect of the new constitution; and it is equally true that it would have been competent for the legislature or the constitutional convention, at that time, to have repealed or abrogated such special grant. It is not, however, a question as to what it might have done, but as to what it did in fact do. And we think, as was determined in Citizens’ Bank of Steubenville v. Wright, auditor, 6 Ohio St. Rep. 318, “ that the 2nd section of the 13th article of the constitution of 1851, is prospective, and not retrospective in its intent and application, and that it is a grant of powers to the general assembly; the power, first, to authorize the formation of corporations under general laws; and, second, to alter or repeal those laws ;” and that it did not have the effect to repeal any special law passed prior to its adoption, authorizing the formation of a railroad corporation.
The second ground of demurrer, that the special act of March 22, 1850, was repealed by the general law “ to create and regulate railroad companies,” passed May 1, 1852, has already been incidentally answered. That act is, by its terms, limited to companies and associations to be organized under its provisions, and has no reference to the formation of companies under pre-existing laws,'except that existing corporations are authorized to accept certain of its provisions if they desire to do so, and contains no express repeal of former grants of corporate powers. The two acts may therefore well subsist together. The legislature at that time, no steps having been taken toward an organization under it, might have repealed the act incorporating the defendants, and it is possible they would have done so, if aware of its existence, and the fact that no subscription had been made to its capita] stock; but we can not, without violence to the well settled *29 rules of statutory construction, hold that the law of May 1,. 1852, had any such effect.

Demurrer to answer overruled.

Brinkerhoff, C.J., and Scott, Sutliff, and Gholson, JJ.; concurred.